# EXHIBIT 2

LYONS & FLOOD, LLP
65 West 36th Street, 7th Floor
New York, New York 10018
(212) 594-2400

Attorneys for Petitioner
MARKLINK SHIPPING CO., LTD.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MARKLINK SHIPPING CO., LTD.,<br><br>                               Petitioner,<br><br>     -against-<br><br>BRIGHT SHIPPING COMPANY LIMITED<br>and/also known as BRIGHT OCEAN<br>COMPANY LIMITED,<br><br>                               Respondents. | 10 Civ.    (  )<br><br>**DECLARATION OF<br>BENJAMIN JOHN HORN** |

I, BENJAMIN JOHN HORN, declare under penalty of perjury of the laws of the United

States, pursuant to 28 U.S.C. § 1746, in support of petitioner MARKLINK SHIPPING CO.,

LTD.'s ("MARKLINK") Verified Petition to Recognize, Confirm, and Enforce a Foreign

Arbitral Award in favor of the petitioner MARKLINK and against respondents BRIGHT

SHIPPING COMPANY LIMITED and/also known as BRIGHT OCEAN COMPANY

LIMITED ("BRIGHT") as follows:

    1.    I am a solicitor of the Supreme Court of England and Wales, and a consultant to

Messrs CSolutions Limited and a Chartered Arbitrator.

    2.    I submit this Declaration based on facts and information known to me personally,

as well as documents and information provided to me by my client and its representative, all of

which I believe to be true and accurate.

    3.    Messrs CSolutions Limited, through the undersigned, represented the petitioner

MARKLINK in the underlying London arbitration against the respondents BRIGHT.

    4.    I certify that the attached copies of the following documents are true and accurate:

        a.    Time Charter dated February 12, 2009, for the M/V ATLANTIC

PROJECT (attached as Exhibit A); and

        b.    First/Final Arbitration Award dated September 2, 2010 (attached as

Exhibit B).

Executed on: November 8, 2010

BENJAMIN JOHN HORN

U:\kmhldocs\2668021\Legal\Horn Decl.pdf.doc

# EXHIBIT A

# Time Charter

**GOVERNMENT FORM**

*Approved by the New York Produce Exchange*

November 6th, 1913-Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946

1     **This Charter Party,** made and concluded in _____ *Seoul, Korea* _____ *12th* _____ day of _____ *February , 2009* _____ ~~19~~ __

2     Between _*MARKLINK SHIPPING CO.,LTD.*_

3     Owners of the good _*Cyprus flag*_ ____ (Steamship/Motorship) ____ _*"M.V. ATLANTIC PROJECT ."*_ of ____ *built 1988* _____

4     of _*15,893*_ tons gross register, and _*8,092*_ tons net register, having engines of _____ indicated horse power

5     and with hull, machinery and equipment in a thoroughly efficient state, and classed _____ *R.M.R.S.*

6     at ___ of about *20,439/25,677 plus 2,340 RORO deck after* cubic *metres* ~~feet~~ grain/ bale capacity, and about _*17,850 metric*_ tons ~~of 2240~~

7     deadweight capacity (cargo and bunkers, including fresh water and stores ~~not exceeding one and one-half percent of ship's deadweight capacity,~~

8     ~~allowing a minimum of fifty tons)~~ on a draft of ____ ~~feet~~ *metres* _____ ~~inches~~ on _____ Summer freeboard, inclusive of permanent bunkers,

9     which are of the capacity of about _____ tons of fuel, and capable of steaming, fully laden, under good weather

10    conditions about _*14.5*_ knots on a consumption of about _*27.3 metric*_ tons **IFO of max 180 CST ( to confirm to RME 25 ) ISO 8217 : 1996(E) , MGO ( to conform to DMA ) ISO 8217 : 1996 Designation ISO - F – DMA, MGO at sea 4.0per metric ton/day ( no reefers), MGO in port with cargo operation 4.2 per metric ton without cargo operation 4.0 per metric ton** ~~of best Welsh coal best grade fuel oil best grade Diesel oil,~~

11    now *trading*

12    and _____ *BRIGHT SHIPPING CO., LTD. as* _____ Charterers of the City of _____ *Seoul , South Korea*

13    **Witnesseth,** That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for

14    ~~about~~ *time charter duration 11-13 month period +/- 20 days Charterers option with harmless/lawful cargos via safe*

15    *berth(s), safe anchorage(s), safe port(s), always afloat, always within Institute Warranty limits* within below mentioned trading l       i       m       i       t       s

16    Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for

17    the fulfillment of this Charter Party. *Acceptance of delivery of the vessel shall not constitute any waiver of Owner's obligation hereunder.*

18    Vessel to be placed at the disposal of the Charterers, ~~at~~ *on dropping last outward sea pilot Singapore/ Japan range port in Owners*

19    *option anytime day or night, Sundays and holidays included, but delivery port to be declared by Owners together with 15days delivery notice.*

20    ~~in such dock or at such wharf or place (where she may safely lie, always afloat, at all times of tide, except as otherwise provided in Clause No.6 ), as~~

21    ~~the Charterers may direct. If such dock, wharf or place be not available time to count as provided for in Clause No.5.~~ Vessel on her delivery to be

22    ready to receive *any permissible* cargo with clean-swept holds and *throughout the period of this charter (unless caused by Charterers or their agents fault)* tight, staunch, strong and in every way fitted for the service, having water ballast, winches and

23    donkey boiler with sufficient steam power, or if not equipped with donkey boiler, then other power sufficient to run all the winches at one and the same

24    time (and with full complement of officers, seamen engineers ~~and firemen~~ for a vessel of her tonnage), to be employed, in carrying *non dangerous* lawful merchan-

25    dise, ~~including petroleum or its products, in proper containers,~~ excluding _*cargoes listed in Clause 41*_

26    ~~(vessel is not to be employed in the carriage of Live Stock, but Charterers are to have the privilege of shipping a small number on deck at their risk,~~

27    ~~all necessary fittings and other requirements to be for account of Charterers), in such lawful trades, between safe port and/or ports in British North~~

28    ~~America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or Gulf of Mexico, and/or~~

29    ~~Mexico, and/or South America~~ _____ ~~and/or~~ E       u       r       o       p       e

30    ~~and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding Magdalena River, River, St. Lawrence between~~

31    ~~October 31st and May 15th, Hudson Bay and all unsafe ports: also excluding, when out of season, White Sea, Black Sea and the Baltic,~~

32    *Trading exclusions – See Clause 80.*

33

34

35    as the Charterers or their Agents shall direct, on the following conditions:

36    1. That the Owners shall provide and pay for all provisions, *fresh water (see Clause 65), wages including all Officers' and crew overtime* and consular shipping and discharging fees of the Crew; shall pay for the

37    insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including boiler water, and maintain her class and keep

38    the vessel in a thoroughly efficient state in hull, machinery and equipment *with certificates necessary to comply with all current calls and/or flag state requirements at all ports of call* for and during the service.

39    2. That the Charterers shall provide and pay for all the fuel *and marine gas oil* except *lubrication oil* as otherwise agreed, Port Charges, *Boatage for Charterers' business, compulsory and customary* pilotages, Agencies, Commissions,

40    Consular Charges (except those pertaining to the Crew *and flag*), and all other usual expenses except those before stated, but when the vessel puts into

41    a port for causes for which *Owners are* ~~vessel is~~ responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because

o       f

42    illness of the crew to be for Owners account *including cost of crew accommodation ashore if required. No in-transit fumigation is allowed.* Fumigations ordered because of cargoes carried or ports visited while vessel is employed under this

43    charter to be for Charterers account. *Vessel is suitable for in-port fumigation only.* ~~All other fumigations to be for Charterers account~~

44    ~~after vessel has been on charter for a continuous period of six months or more.~~ *If fumigation ordered due to defect/fault by Owners, vessel to be for Owners' account.*

45    Charterers are to provide necessary dunnage, and shifting boards, also any extra fittings requisite for a special trade or unusual cargo, but

46    Owners to allow them the use of any dunnage and shifting boards already aboard vessel. Charterers to have the privilege of using shifting boards

47    for dunnage, they making good any damage thereto.

48    3. ~~That the Charterers, at the port of delivery, and the Owners, at the port of re-delivery, shall take over and pay for all fuel remaining on~~

49    ~~board the vessel at the current prices in the respective ports, the vessel to be delivered with not less than ............ tons and not more than~~

50    ~~tons and to be re-delivered with not less than~~ ............................................ ~~tons and not more than~~ ............ ~~tons.~~ *See Clause 30.*

51    4. That the Charterers shall pay for the use and hire of the said Vessel at the rate of *USD  6,000  daily including overtime*

52    *payable 15 days in advance (See Clause no.29)* ~~United States Currency per ton on vessel's total deadweight carrying capacity, including bunkers and~~

53    ~~stores, on~~ ............ ~~summer freeboard, per Calendar Month,~~ commencing on and from the *time* ~~day~~ of her delivery, as aforesaid, and at

54    and after the same rate for any part of a *day* ~~month:~~ hire to continue until the hour of the day of her re-delivery in like good order and condition, ordinary

55    wear and tear excepted, to the Owners (unless lost) ~~at~~ *on dropping last outward sea pilot one safe port anytime day or night, Sundays and holidays included within following range : Skaw - full Med Sea range including UK and Black Sea in Charterers*

56    *option, PMO/Japan range, Buenos Aires/Boston range in Charterers option. Charterers are to give 5/3/2/1 days redelivery notice* unless otherwise mutually agreed. Charterers are to give Owners not less than __30/15__ days

57    notice of vessel's expected date of re-delivery, and probable port. *Charterers to keep Owners advised of vessel's movement and notify Owners immediately of unforeseen delays.*

58    5. Payment of said hire to be made ~~in New York in cash~~ *by wire transfer* in United States Currency, ~~semi-monthly~~ *as per last hire Clause 29(c)* in advance, and for the last *15 days* ~~half month~~ or

59    part of same the approximate amount of hire, *but always subject to the wordings of Clause 29,* and should same not cover the actual time, hire is to be paid for the balance day by day, as it becomes

60    due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers, otherwise failing the punctual and regular payment of the

61    hire, or bank guarantee, or on any breach of this Charter Party, the Owners shall be at liberty to *withhold and/or* withdraw the vessel from the service of the Char-

62    terers, without prejudice to any claim they (the Owners) may otherwise have on the Charterers. ~~Time to count from 7 a.m. on the working day~~

63    ~~following that on which written notice of readiness has been given to Charterers or their Agents before 4 p.m., but if required by Charterers, they~~

64    ~~to have the privilege of using vessel at once, such time used to count as hire.~~

65    Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain, by the Charterers or their Agents, subject

66    to 2½% commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application

67    of such advances .

68    6. That the cargo or cargoes be laden and/or discharged in any *safe* dock or at any *safe* wharf or ~~place~~ *safe anchorage* that Charterers or their Agents may

69    direct, provided the vessel can safely lie always afloat at any time of tide, except at such places where it is customary for similar size vessels to safely

70 lie aground *NAABSA Clause to be applied during this Charter party where customary.*

71 7. That the whole reach of the Vessel's Holds, Decks, and usual places of loading (not more than she can reasonably stow and carry), also

72 accommodations for Supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's officers, crew,

73 tackle, apparel, furniture, provisions, stores and fuel. ~~Charterers have the privilege of passengers as far as accommodations allow, Charterers~~

74 ~~paying Owners................per day per passenger for accommodations and meals. However, it is agreed that in case any fines or extra expenses are~~

75 ~~incurred in the consequence of the carriage of passengers, Charterers are to bear such risk and expense.~~ *No passengers.*

76 8. That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and

77 boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and

78 agency; and Charterers are to load, stow, *lash, unlash, relash, dunnage/securing,* ~~and~~ trim *tally and discharge* the cargo at their expense

under the supervision of the Captain, who is to sign Bills of Lading for

79 cargo as presented, in *strict* conformity with Mate's ~~or Tally Clerk's~~ receipts.

80 9. That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, ~~Officers, or Engineers,~~ the Owners shall on

81 receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments.

82 10. That the Charterers shall have permission to appoint a Supercargo, who shall accompany the vessel and see that voyages are prosecuted

83 with the utmost despatch. He is to be furnished with free *and suitable* accommodation, and same fare as provided for Captain's table,

Charterers paying at the

84 rate of USD$15.00 per day. Owners to victual Pilots and Customs Officers, and also, when authorized by Charterers or their Agents, to victual Tally

85 Clerks, Stevedore's Foreman, etc, ~~Charterers paying at the current rate per meal, for all such victualling.~~

86 11. That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, and the

87 Captain shall keep a full and correct Log of the voyage or voyages, which are to be patent to the Charterers or their Agents, and furnish the Char-

88 terers, their Agents or Supercargo, when required, with a *legible* true copy of daily *deck and engine* Logs *in English,* showing *among*

*others* the course of the vessel and distance run and the con-

89 sumption of fuel.

90 12. That the Captain shall use diligence in caring for the ventilation of the cargo. *Any special ventilation requirement to be notified to*

*Master in writing by the Charterers.*

91 13. ~~That the Charterers shall have the option of continuing this charter for a further period of~~...............................................................

92 ...............................................................................................................................................................................................

93 ~~on giving written notice thereof to the Owners or their Agents~~.....~~days previous to the expiration of the first-named term, or any declared option.~~

94 14. That if required by Charterers, time not to commence before.....*3rd March, 2009*.......and should vessel

95 not have *been delivered* ~~given written notice of readiness on~~.....*20th March, 2009*.....~~but not later than 4 p.m.~~ Charterers or

96 their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness. *7days spread laycan to be*

*reconfirmed by Owners with Owners 15days delivery notice. Further Owners are to give Charterers not less than 25/20/15/10*

*days approximate notice of vessels expected date of delivery and 7/5/3/2/1days definite notice of her delivery.*

97 15. That in the event of the loss of time from deficiency *and/or default* of men or stores, fire, breakdown or damages to hull, machinery

or equipment,

98 grounding, detention by average accidents to ship or cargo, dry docking for the purpose of examination or painting bottom, or by any other cause

99 preventing the full working of the vessel, the payment of hire shall cease for the time thereby lost; and if upon the voyage the speed be reduced by

100 defect in or breakdown of any part of her hull, machinery or equipment, the time so lost, and the cost of any extra fuel consumed in consequence

101 thereof, and all *direct* ~~extra~~ expenses shall be deducted from the hire. *See Clause 55.*

102 16. That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be

103 returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas,

104 Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted.

105 The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for the

106 purpose of saving life and property.

107 17. That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three Persons at ~~New York~~

*L          o          n          d          o          n* ,

108 one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for

109 the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial *shipping* men

*conversant with shipping matters and affairs. All arbitrators to be members of LMAA.*

110 18. That the Owners shall have a lien upon all cargoes, and all *sub-hire and* sub-freights for any amounts due under this Charter, including General Aver-

111 age contributions, and the Charterers to have a lien on the ship for all monies paid in advance and not earned, and any overpaid hire or excess

112   deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which
113   might have priority over the title and interest of the owners in the vessel.

114       19. That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and
115   Crew's proportion. General Average shall be adjusted, stated and settled *in London*, according to Rules 1 to 15, inclusive, 17 to 22, inclusive, and Rule F of
116   York-Antwerp Rules *1994 or any subsequent amendments in London* ~~1924, at such port or place in the United States as may be selected by the~~
     ~~carrier, and as to matters not provided for by these~~
117   ~~Rules, according to the laws and usages at the port of New York. In such adjustment disbursements in foreign currencies shall be exchanged into~~
118   ~~United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign currency shall be converted at~~
119   ~~the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the ship. Average agreement or~~
120   ~~bond and such additional security, as may be required by the carrier, must be furnished before delivery of the goods. Such cash deposit as the carrier~~
121   ~~or his agents may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon, shall, if~~
122   ~~required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. Such deposit shall, at the option of the~~
123   ~~carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be held in a special account at the~~
124   ~~place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balances, if any, shall be paid in~~
125   ~~United States money.~~
126   ~~In the event of accident, danger, damage, or disaster, before or after commencement of the voyage resulting from any cause whatsoever,~~
127   ~~whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract, or otherwise, the~~
128   ~~goods, the shipper and the consignee, jointly and severally, shall contribute with the carrier in general average to the payment of any sacrifices,~~
129   ~~losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the~~
130   ~~goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or~~
131   ~~ships belonged to strangers.~~
132       Provisions as to General Average in accordance with the above are to be included in all bills of lading issued hereunder. *It is understood*
133   *that the charter hire is not to contribute to General Average.*

133       20. Fuel used by the vessel while off hire, ~~also for cooking, condensing water, or for grates and stoves~~ to be agreed to as to quantity, and the
134   cost of replacing same, to be allowed by Owners.

135       21. That as the vessel may be from time to time employed in tropical waters during the term of this Charter, Vessel is to be docked at a
136   convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary, at least once in every six months, reckoning from
137   time of last painting, and payment of the hire to be suspended until she is again in proper state for the service.
138   *Vessel not to be drydocked whilst performing this Charter Party except in case of emergency.*............................................
139   ...................................................................................................................................

140       22. Owners shall maintain the gear of the ship as fitted, providing gear (for all ~~derricks/~~*cranes*) capable of handling lifts up to ~~three tons, also~~
     *as specified in Clause 35. Owners also to provide the vessel with sufficient light clusters as on board for night work at all hatches*
     *simultaneously free of charge to Charterers and are to maintain same in efficient condition throughout this charter.*
141   ~~providing ropes, falls, slings and blocks. If vessel is fitted with derricks capable of handling heavier lifts, Owners are to provide necessary gear for~~
142   ~~same, otherwise equipment and gear for heavier lifts shall be for Charterers' account. Owners also to provide on the vessel lanterns and oil for~~
143   ~~night work, and vessel to give use of electric light when so fitted, but any additional lights over those on board to be at Charterers' expense.~~ The
144   Charterers to have the use of any gear on board the vessel.

145       23. Vessel to work night and day, *Sundays and Holidays included* if required by Charterers, and all winches to be at Charterers' disposal
     during loading and discharging;
146   *no winchman from the crew* ~~steamer to provide one winchmen per hatch to work winches day and night, as required, Charters agreeing to pay~~
     ~~officers, engineers, winchmen,~~
147   ~~deck hands and donkeymen for overtime work done in accordance with the working hours and rates stated in the ship's articles. If the rules of the~~
148   ~~port, or labor unions, prevent crew from driving winches,~~ shore Winchmen to be paid by Charterers. In the event of a disabled winch or winches, or
149   insufficient power to operate ~~winches~~ *cranes*, Owners to pay for shore engine, or engines, in lieu thereof, if required, and pay any loss of time
150   o        c        c        a        s        i        o        n        e        d
     thereby.

151       24. ~~It is also mutually agreed that this Charter is subject to all the terms and provisions of and all the exemptions from liability contained~~
152   ~~in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled "An Act relating to Navigation of Vessels;~~
153   ~~etc., " in respect of all cargo shipped under this charter to or from United States of America. It is further subject to the following clauses, both~~
154   ~~of which are to be included in all bills of lading issued hereunder:~~
155                                      ~~*U.S.A. Clause Paramount*~~

156 ~~This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April~~
157 ~~16,1936,which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of~~
158 ~~any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this bill of lading~~
159 ~~be repugnant to said Act to any extent, such term shall be void to that extent, but no further.~~
160                                    ~~*Both-to-Blame Collision Clause*~~
161 ~~If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the~~
162 ~~Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the goods carried~~
163 ~~hereunder will indemnify the Carrier against all loss or liability to the other or non carrying ship or her owners in so far as such loss~~
164 ~~or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-~~
165 ~~carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non carrying ship or her~~
166 ~~owners as part of their claim against the carrying ship or carrier.~~
167     25. The vessel shall not be required to enter any ice-bound port, or any port where lights or light-ships have been or are about to be with-
168 drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the
169 port or to get out after having completed loading or discharging. *Vessel not to follow ice breakers.*
170     26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible for the
171 navigation of the vessel, *acts of pilots and tugboats* insurance, crew, and all other matters, same as when trading for their own account.
172     27.  A commission of *1.25* ~~2½~~ percent is payable by the Vessel and Owners to *Ace Merchant Marine, Seoul, Korea*
173 *plus 1.25 percent to Seawise Chartering, London, UK.*................................................................................................................
174 on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.
175     28. An address commission of ~~2½~~ *2.5* per cent payable to.......*Charterers*..........on the hire earned and paid under this Charter.

*Clause No. 29 to 128 both inclusive, as attached are to be fully incorporated in this Charter Party.*


**Owners**                                              **Charterers**




............................................              ...............................................

# RIDER CLAUSES TO M.V. "ATLANTIC PROJECT"/BRIGHT CHARTER PARTY DATED 12TH FEB., 2009

**Clause 29. Hire Payment Clause**

A. First hire and value of bunker on delivery to be paid within 3 banking days after vessels delivery and Charterers receipt of relevant fax or e-mail invoice in Seoul, Charterers are entitled to deduct from last sufficient hire payments value of estimated quantities of bunkers on redelivery only Owners will settle their matters directly with agents.

B. Where there is any failure to make "punctual and regular payment" due to oversight or negligence or error or omission of Charterers' employees, bankers or Agents or otherwise any reason where there is absence of intention to fail to make payment as set out, Charterers shall be given by Owners 3 (three) banking days written notice to rectify the failure and where so rectified, the payment shall stand as "punctual and regular payment".

C. In the event that the vessel is expected to be redelivered to the Owners prior to the expiry of the last 15 days period that would be covered by the next payment of hire which shall be supported by a calculation in good faith. Charterers shall be entitled to effect payment on hire on the basis of the estimated time necessary to complete the service.

D. Cash money drawn by the Master shall be taken at the office of the port Agents or shall be drawn by the Master from the bank. In the event that the Master requests delivery of cash money at the vessel, all risk and expenses involved in arranging and making such delivery of cash money to the vessel on Owner's behalf shall be borne by the Owners.

E. Deleted.
F. Deleted.

G. Hire to be paid to:
SEB Banka,
SWIFT: UNLALV2X,
IBAN   LV42UNLA0050003770388,
IFO: Marklink Shipping Co. Ltd.

**Clause 30. Bunker Clause**

Bunkers on delivery quantity about 200 metric tons of IFO(180CST) and about 25 metric tons of MGO. Bunkers on redelivery to be about same quantity as on delivery. Price adapted both ends to be Singapore platts prices on the day of delivery.

# RIDER CLAUSES TO M.V. "ATLANTIC PROJECT"/BRIGHT CHARTER PARTY DATED 12TH FEB., 2009

**Clause 31. Description of Vessel**



LENGTH: - HOLD – 16.6 m; - TWND - 13.0 m
COVERS: - H/COVER–12.5x12.5 m; - T/COVER-12.5x12.5 m
CAPACITY: - HOLD–2010 m³; - TWND – 2876 m³
AREA : - HOLD – 271 m² ; - TWND – 488 m²

REMARKS: GENERAL VIEW AND MIDLE SECTION OF THE
LOWER HOLD AND TWEENDECK No 4.
ALL DIMENTIONS ARE ABOUT.

# RIDER CLAUSES TO M.V. "ATLANTIC PROJECT"/BRIGHT CHARTER PARTY DATED 12TH FEB., 2009



LENGTH: - HOLD – 36.0 m;  -TWND - 35.0 m
COVERS:  - H/COVER–12.5x33.6 m;  -
T/COVER-33.3x12.5 m

REMARKS:  GENERAL VIEW AND MIDLE SECTION OF THE
          LOWER HOLD AND TWEENDECK No 3.
          ALL DIMENTIONS ARE ABOUT.

# RIDER CLAUSES TO M.V. "ATLANTIC PROJECT"/BRIGHT CHARTER PARTY DATED 12TH FEB., 2009

| Name | ATLANTIC PROJECT |
|---|---|
| Ex Names | FLORESTI, PCC LOS SANTOS |
| Year of Built | 1988 |
| Built Shipyard | WARNOWWERFT WARNEMUENDE, GERMANY, HALL |
| IMO No. | 8811340 |
| Call Sign | P3HK5 |
| Class Society | R.M.R.S. |
| Class Notation | KM    L 2 A 2 |
| Flag | CYPRUS |
| Port of Registry | LIMASSOL |
| Owners | MARKLINK SHIPPING CO.LTD. |

| DIMENTIONS | |
|---|---|
| LOA | 173, 5 m |
| LBP | 161, 2 m |
| Breadth | 23, 05 m |
| Depth | 13, 72 m |
| Max. Draught | 10, 02 m |
| Min. draught | 6. 10 m |

| LIGHTSHIP | 8 920 T |
|---|---|

**TONNAGE**

DWT 17 850 T

Displacement 26 770 T

| | GROSS | NET |
|---|---|---|
| International | 15 893 | 8 092 |
| Panama | 16 539, 67 T | 12 033, 01 T |
| Suez | 16 456, 77 T | 12 658, 45 T |

| TANK CAPACITIES | | |
|---|---|---|
| Fuel Oil | 2 014 m3 | |
| MDO | 597 m3 | |
| Fresh Water | 256 m3 | |
| Ballast Water | 4 320 m3 | |

| CARGO INTAKE | |
|---|---|
| Containers TEU BSS 14 MT HOMO | 445 |
| Containers FEU BSS HOMO | 210 |

# RIDER CLAUSES TO M.V. "ATLANTIC PROJECT"/BRIGHT CHARTER PARTY DATED 12TH FEB., 2009

| | |
|---|---|
| Car Capacity on ro-ro deck ( 4,2 x 1, 65 m ) | 232 |
| Truck Capacity on ro -ro deck ( 6,7 x 2, 5 m ) | 81 |
| Trailer Capacity on ro-ro deck ( 20 foot ) | 90 |
| Lane Meters | 900 on 2,5 m width 600 on 3 m width |
| Grain Capacity | 20 439 m3 |
| Bale Capacity | 25 677 m3 |
| IMDG classes and cargo spaces intended for the carriage of dangerous goods. | *Hold No1:* |
| The vessel has Spray System in Holds No 1,2,3,4. The System has been designed in accordance with p.2.1.2. and 2.1.3. Regulation 54 of SOLAS-74 to carry dangerous goods class 1. | -Packed goods permitted: IMDG Class: 1.1-1.6, 1.4S, 2.1, 2.2, 3.1-3.3, 4,1-4.3, 5.1, 6.1, 7 (UN Nos.2910, 2912, 2977,2978) 8, 9, *Holds Nos 2, 3, 4:* |
| Vessel is equipped with the removable bulkhead, which is situated between tweendecks no. 3 and 4. | -Packed goods permitted: 1.1-1.2 , 1.4S, 2.1-2.2, 3.3, 6.1(solid), 7(UN Nos.2910,2912,2977,2978), 8 Bulk goods permitted : 4.1, 4.2, 4.3, 5.1, 9 *Cardeck:* |
| | Packed goods permitted: 1.4S, 2.1-2.2, 3.3, 4.1-4.2, 5.1, 6.1(solid), 8, 9 *Weather deck:* |
| | Packed goods permitted: 1.1-1.6, 1.4S, 2.1-2.3, 3.1-3.3, 4.1-4.3, 5.1-5.2, 6.1, 7(UN Nos.2910,2912,2977,2978) 8, 9 |

| REEFER PLUGS | | 30 on Deck, Standart Type, 380/220 V, 32 AMPS | |
|---|---|---|---|
| HOLD DIMENTIONS | L | B | H |
| TDECK №1 | 14,0 | 9,0 | 4,6 |
| HOLD №1 | 16.2 | 5.6/14.4 | 6.0 |
| TDECK №2 | 31,4 | 23,0 | 6,3 |
| HOLD №2 | 32.7 | 6.6/18.0 | 6.0 |
| TDECK №3 | 35,2 | 23,0 | 6,3 |
| HOLD №3 | 36.0 | 18.0 | 6.0 |
| TDECK №4 | 15,0 | 23,0 | 7.2/6.0 |

# RIDER CLAUSES TO M.V. "ATLANTIC PROJECT"/BRIGHT CHARTER PARTY DATED 12TH FEB., 2009

| HOLD №4 | 17.6 | 18.0/14.2 | 6.2/7.4 |
|---|---|---|---|

|  | WEATHER DECK | TWEEN DECK |
|---|---|---|
| № 1 | 13, 1 x 7, 42 m | 12, 505 x 7, 6 m |
| № 2 | 26, 4 x 12, 5 m | 26, 105 x12,5/11,9   (at crossbeam) |
| № 3 | 33, 6 x 12, 5 m | 33, 3 x 12, 5/ 11,9   (at crossbeam) |
| № 4 | 12, 8 x 12, 5 m | 12, 505 x 12, 5 m |

| HOLD CAPACITIES cub.m | BALE | GRAIN(   open tweendeck covers) |
|---|---|---|
| № 1 | 1 316 | 1 511 |
| № 2 | 3 112 | 3 430 |
| № 3 | 3 828 | 4 440 |
| № 4 | 2 010 | 2 235 |
| Ro-Ro deck aft | 2 595 |  |
|  | TTL= 12 861 m3 | TTL  =  11 616 m3 |

| TWEENDECK CAPACITIES cub.m | | |
|---|---|---|
| № 1 | 666 | 670 |
| № 2 | 3 750 (+ 804) | 3 005 |
| № 3 | 3 676 (+1 044) | 3 320 |
| № 4 | 2 443 (+ 433) | 1 828 |
| Quantities in ( ) are the capacity of hatch coamings | TTL= 12 816 m3 | TTL= 8 823 m3 |
| GRAND TOTAL | 25 677 m3 | 20 439 m3 |

| RO-RO DECK | 2 340 m2 | | |
|---|---|---|---|

| PERMISSIBLE LOADS | | | |
|---|---|---|---|
| Tank top № 1 | 10, 00 t/m2 | Tank top № 2-3 | 10, 50 t/m2 |
| Tween deck cover № 1 | 3, 10 t/m2 | Tank top № 4 | 10, 50 t/m2 |
| Tween deck № 1 | 3, 10 t/m2 | Tween deck cover № 2-4 | 4, 20 t/m2 |
| Hatch cover № 1 Weather deck hold № 1 | 1, 75 t/m2 1, 75 t/m2 | Tween deck № 2-4 Hatch cover № 2-4 | 4, 20 t/m2 1, 75 t/m2 |
| Ro –Ro deck aft part | 2, 55 t/m2 | Weather deck hold № 2-4 | 1, 63 t/m2 |

| CARGO GEAR |
|---|
| 2 electrical cranes SWL 12,5 tons each between holds 3&4, combinable as well to 1x25 t and capable of serving either holds 3&4 ; |
| 2 electrical cranes SWL 12,5 tons each between holds 1&2, combinable as well to 1x25 t |

# RIDER CLAUSES TO M.V. "ATLANTIC PROJECT"/BRIGHT CHARTER PARTY DATED 12TH FEB., 2009

and capable of serving either holds 1&2 ;

2 electrical derricks SWL 25 tons each between holds 2&3 with one derrick serving each hold exclusively ;

1 electrical heavy-lift derrick SWL 125 tons between holds 2&3 and capable of serving either holds .

| STERN RAMP |
|---|
| Quarter stern ramp of Starboard Side |
| Length 25 m. |
| Width 5, 8 m. |
| Max Loading capacity 40 tons |
| Max Load per axle 18 tons for single axle vehicle |
| Height of stern entrance 4, 5 m ( practical height ) |
| Ramp inclination (amplitude) is limited by angles +/-8 deg =pier is 1.0m above or 3.4m below ramp deck . (The high of pier depends on vsls aft draght). |

| BOWTHRUSTER | 864 kW, | C. P. P. Propeller |
|---|---|---|

| AIR CHANGES |
|---|
| 6 per hour for holds No. 2 -4 at sea and port |
| 10 per hour for hold No. 1 at sea and port |
| 10 per hour for tweendecks and ro-ro deck at sea |
| 20 per hour for tweendecks and ro-ro deck at port |
| $CO_2$ in cargo spaces and E/R |

| MAIN ENGINE |
|---|
| MAN K 5 S Z 70 / 125 B |
| 7 600 Kw at 145 rpm |
| IFO of max 180 CST ( to confirm to RME   )   ISO 8217 :          , MGO in maneuvering 25                                        1996(E) |
| mode |
| Direct transition to 4 blade fixed propeller |

| AUX. ENGINES |  |  |  |
|---|---|---|---|
| 4 x SKL 6 VDS 26/ 20 AL 2 579 kW each |  |  |  |
| MGO ( to conform to DMA )        ISO 8217 : 1996 Designation ISO -       F     –     DMA |  |  |  |

| SPEED AND CONSUPTION FULLY LADEN   (   MAX BEAUFORTSCALE 2       ) |
|---|
| Max 14.5 knots 27.3 t/day |
| Serv 14. 0 knots 25 .0 t/day |

# RIDER CLAUSES TO M.V. "ATLANTIC PROJECT"/BRIGHT CHARTER PARTY DATED 12TH FEB., 2009

MGO at sea 4,0 t/day ( no reefers)

MGO in port with cargo operation 4.2 t, without cgo oper 4.0 t

Vessel uses MGO in main engine while maneuvering and in narrow/shallow waters.

All details "about" – all details given in good faith but without guarantee

FUEL STANDART ACCORDING TO ISO 8217:1996(E)

| MARINE RESIDUAL FUELS | | | |
|---|---|---|---|
| CHARACTERISTICS | UNIT | LIMIT | RME 25 |
| Density @ 15 Oc | Kg/m3 | max | 991 |
| Kinematic viscosity @ 100 oC | cSt | max | 25 |
| Approx Visc @ 50 Oc | cSt | | 225 |
| Flash point | oC | min | 60 |
| Pour Point ( upper ) oC winter quality summer quality | oC oC | max min | 30 30 |
| Micro Carbon residue BS 1982 | % m/m | max | 15 |
| Ash | % m/m | max | 0. 10 |
| Water | % v/v | max | 1. 0 |
| Sulphur | % m/m | max | 5. 0 |
| Vanadium BS 1982 | mg/kg | max | 200 |
| Aluminium & Silicon | mg/kg | max | 80 |
| Total sediment pot | % m/m | max | 0.10 |

Notes : -

-No lubricants in fuel

-CCA max 860 ( ignition quality )

General Note : -

Vessel is in DNV Petroleum Services FQT ( DNV PS ). Representative bunker manifold drip samples will be taken at the "point of custody transfer" (vessel's bunker manifold ) in accordance with ISO 8217. The three obtained representative samples will be distributed between Supplier, Vessel and nearest DNVPS laboratory for testing. Test results will be considered binding on both parties, including DNVPS tested density for quantity determination.

FUEL STANDART ACCORDING TO ISO 8217 : 1996(E)

# RIDER CLAUSES TO M.V. "ATLANTIC PROJECT"/BRIGHT CHARTER PARTY DATED 12TH FEB., 2009

| MARINE DISTILLATE FUELS |
|---|

| CHARACTERISTICS | UNIT | LIMIT | DMA |
|---|---|---|---|
| Density @ 15 oC | Kg/m3 | max | 890 |
| Kinematic viscosity @ 40 oC | cSt | min max | 1. 50 6. 00 |
| Flash point | oC | min | 60 |
| Pour Point winter quality summer quality | oC oC | max min | -6 0 |
| Cloud point | oC | max | - |
| Micro Carbon residue , 10% residue | % m/m | max | 0. 30 |
| Micro Carbon residue | % m/m | max | - |
| Ash | % m/m | max | 0. 01 |
| Sediment by extraction | % m/m | max | - |
| Total sediment      existent | % m/m | | - |
| Water | % v/v | max | - |
| Cetane number | | min | 4 0 |
| Visual inspection | | - | - |
| Sulphur | % m/m | max | 1. 5 |
| Vanadium | mg/kg | max | - |
| Total sediment existent | % m/m | | - |
| Aluminium plus silicon | Mg  /  kg | max | - |

General Note : -

Vessel is in DNV Petroleum Services FQT ( DNV PS ). Representative bunker manifold drip samples will be taken at the "point of custody transfer" (vessel's bunker manifold ) in accordance with ISO 8217. The three obtained representative samples will be distributed between Supplier, Vessel and nearest DNVPS laboratory for testing. Test results will be considered binding on both parties, including DNVPS tested density for quantity determination.

**Clause 32.**

Charterers to pay for extra insurance premium as per vessel's underwriters tariff against their invoice upon receipt of same from Owners and before entering war zone. Such insurance premium shall be quoted to Charterers as per Owners underwriters and if not accepted within 48 hours then the vessel will not be allowed to call war zone and all expenses and delay to be for Charterers' account and vessel to remain on hire. Alternatively Charterers have the right to place war insurance directly on London market and provide

# RIDER CLAUSES TO M.V. "ATLANTIC PROJECT"/BRIGHT
# CHARTER PARTY DATED 12TH FEB., 2009

the Owners with prove of cover 24 hours before vessel entering war zone, otherwise vessel will not be allowed to enter the war zone and all expenses and delays will be for charterers account and vessel to remain on hire.

When sailing in the Gulf of Aden or passing Somalia, in order to safeguard the safety of the crew and vessel, the master shall have liberty to follow the recommendations of the UKMTO (United Kingdom Maritime Trade Operations, Dubai) and/or coalition naval forces and/or flag state and shall be at liberty to sail only in guarded and patrolled routes or suggested corridors in convoy or otherwise and to take all other actions as he shall deem reasonable to safeguard the safety of the crew and vessel. The vessel will remain on hire at all times but if any guard and/or patrol cost involved due to the recommendation of designated organization, then, the cost should be shared between Owners and Charterers as 50/50.

**Clause 33.**
Charterers to have the benefit of any return insurance premium receivable by Owners from their Underwriters, as and when received from Underwriters, by reason of vessel being in port for a minimum period of 30 days, if on full hire for this period and pro-rata for the time actually on-hire.

**Clause 34.**
Joint on/off hire surveys to be carried out, the cost to be equally shared between Owners and Charterers. The time occupied for on-hire survey to be for Owner's account and the time occupied for off-hire survey to be for Charterer's account. In both instances, only actual time lost to count, on hire survey to be held at first loadport and off-hire survey to be held at last discharge port.

Notwithstanding all contained on this clause Owners have the right to be represented by the Master, in this case Charterers to nominate their own surveyor and all cost and time to be for their account.

**Clause 35.**
Both parties to have the option of cancelling this Charter Party with reasonable notice if War breaks out between any two or more of the following countries to such an extent as to render the continuation of the Charter Party impossible:
U.S.A., Russia, Great Britain, Japan, The People's Republic of China, France, Republic of Korea.

**Clause 36.**
Should the vessel put back whilst on voyage by reason of any accident or breakdown or deviation upon the course of the voyage caused by sickness of or any accident to the crew or any person onboard the vessel other than persons travelling at the request of Charterers, or by reason of refusal of the Captain or the crew

10

# RIDER CLAUSES TO M.V. "ATLANTIC PROJECT"/BRIGHT CHARTER PARTY DATED 12TH FEB., 2009

to perform their duties, the hire shall be suspended from the time of putting back until she be again in the same position or regain the line of voyage, bunkers consumed during the period shall be for Owners' account. Especially the following to be deemed as off-hire until the vessel be again in the same or equivalent equidistant position and resumed the voyage:

A. In the event of deviation from lading invalid crew and/or stowaway and from salvage.
B. In the event of loss of time strike of the crew.
C. In the event of deviation by alleged oil pollution.

**Clause 37.**
Charterers are not responsible for stevedore damage or other damage to the vessel unless notified in writing or by cable by the Master at the time of occurrence of damage or as soon as possible thereafter. But within 24 hours from occurrence, except in the case of hidden damage which to be noticed as soon as possible after discovery., Master shall co-operate with Charterers or their agents to endeavour to obtain a written acknowledgement by the responsible parties causing damage unless should have been made good in the meantime.

On expiration of this Charter, any damage beyond ordinary wear and tear to the vessel sustained during this Charter which ascertained by the joint off-hire survey and supported by Master's report is to be made good in Charterers' account before redelivery, however Charterers have the option of redelivering the vessel without repairing stevedore damage, unless such damage affects seaworthiness of the vessel or normal working and trading of the vessel.

Owners agree that damage not affecting seaworthiness or efficient and safe working of the ship may remain for occasional repair when the ship is to dock for Owner's account, so that the Charterers pay the actual cost of repair for stevedore damage not the time used.

**Clause 38.**
Vessel to be delivered with valid deratisation certificate or deratisation exemption certificate on board and if this does not cover the whole period of time charter Owners to undertake to carry out all necessary steps to renew such certificate and costs of same and detention to be for Owner's account.

**Clause 39.**
Owners and Master to undertake best efforts to co-operate with Charterers for best stowage of cargo. Owners and Master also undertake to co-operate with Charterers in taking necessary steps for cargo fumigation, if necessary, at Charterers' time and expenses.

**Clause 40.**

# RIDER CLAUSES TO M.V. "ATLANTIC PROJECT"/BRIGHT CHARTER PARTY DATED 12TH FEB., 2009

Vessel to possess the necessary certificates to comply with safety and health regulations and current requirements at all ports of call.

**Clause 41. Cargo Exclusion**

All corrosive, dangerous, explosives, hazardous, inflammable, injurious and toxic substances or goods, all goods substances listed in the latest IMO-IMDG code including but not limited to, acids, aluminum dross, aluminum ferro, aluminum nitrate, ammonium nitrate, ammonium chloride, ammonium sulphate, ammunition, animals, antique, art objects and curious, arms, asbestos, asphalt, asphalt in bulk, ammonia chloride, all cargoes which require appendix "B"(but allowed charcoal, coal, ferrosilicon, concentrates, pet coke and woodchip), banknotes or other forms of currency, bitumen, black powder, blasting caps, bombs, bonds or other negotiable instrument, bones or bone meal, borax, bullion, boycott cargoes, bulk purities, bulk cement, calcium, calcium carbide, calcium hypo-chloride, calcium ex-chloride, castor beans, cocoa, coffee, copra, cotton and cotton waste, cotton seeds expellers, cotton in bale, creosote and creosoted goods, carbide, caustic soda, chilean nitrate of soda, cakes, detonator caps, detonators, direct reduced iron in any form, drugs, dynamite, devco coal, esparto grass, essential oils, fishmeal, firearms, fie briquette, fire arms, fire briquettes, ferophosphorus, fish crap, fluorspar, gaseous coal, hides, hydrochloride solutions, india coals, iron oxide, iron sponge, iron ore pellets, incendiaries, jewellery and other objects of rare or precious nature, jute live-stock, locks, locomotives, logs, lead nitrate, limestone, lime mobile homes or caravans, motor blocks, motor spirit, manioc and manioc pellets, magnesium nitrate, naphtha, narcotics, nuclear substances or fuels, nitrates, nefeline syenite, nigerseed, nitrate of soda oily pieces, oily expellers, organic peroxide, oil cakes, petroleum derivates and all petroleum products, pitch, pitch in bulk, poultry, precious or rare metals or stones, radio active substances and/or waste thereof, pond coal, pesticides, pencil pitch, pollard pullets, pond coal, palm kernel expellers, pollard pellets, potassium nitrate, potassium chloride, quebracho, rags, refrigerated cargo, rock-salt, radio-isotopes, residues, rice bran, sawdust, skins and furs quick lime, scrap, salt, saltpetre, specic, sponge iron, sulphate in bulk, sulphur, sunflower seed expellers and cakes, sunflowers seeds, silicon, soda ash in bulk, steam coal, spirit, sinc dross, skimming, seed meals, tar and all its products, turnings and swarf solvents, TNT, tobacco, turpentine, tankage, vanadium ore waste and old paper, war & war-like materials, wheat bran, wet hides, zinc ashes.

Owners allow to load bagged grain/bagged rice/bagged food cargo. For the purpose of loading any bagged food in cargo compartments, if any additional cleaning from normal sweeping and washing will be required, same to be for Charterers time and expense and crew to be considered as Charterers servants and vessel at all times to remain on hire. Charterers to load only cargos that allowed as per vessels bulk cargo and dangerous goods certificates.

If IMO-classified cargo is to be carried, the amount of such cargo shall be limited to 7000 tons and to 1500

# RIDER CLAUSES TO M.V. "ATLANTIC PROJECT"/BRIGHT CHARTER PARTY DATED 12TH FEB., 2009

tons in case of IMO 1 per voyage where the Charterers shall provide the master with any evidence he may reasonable require to show that the cargo is packaged, labeled, loaded and stowed in accordance with IMO regulations, failing which the master is entitled to refuse such cargo or,if already loaded, to unload it at the Charterer's risk and expense.

**Clause 42.**
Charterers to have the option of holding a superficial inspection at any time, Owners or Master giving every facility to carry it out. If such inspection is held after vessel delivery, same to be in Charterers' time and account.

**Clause 43.** Deleted.

**Clause 44.   Bimco War Risks Clause for Time Charters, 2004 (Code Name: CONWARTIME 2004)**
(a)   For the purpose of this Clause, the words:
(i)   "Owners" shall include the shipowners, bareboat charterers, disponent owners, managers or other operators who are charged with the management of the Vessel, and the Master; and
(ii)   "War Risks" shall include any actual, threatened or reported:
war; act of war; civil war; hostilities; revolution; rebellion; civil commotion; warlike operations; laying of mines; acts of piracy; acts of terrorists; acts of hostility or malicious damage; blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever); by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel.

(b)   The Vessel, unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through, any port, place, area or zone (whether of land or sea), or any waterway or canal, where it appears that the Vessel, her cargo, crew or other persons on board the Vessel, in the reasonable judgement of the Master and/or the Owners, may be, or are likely to be, exposed to War Risks. Should the Vessel be within any such place as aforesaid, which only becomes dangerous, or is likely to be or to become dangerous, after her entry into it, she shall be at liberty to leave it.

(c)   The Vessel shall not be required to load contraband cargo, or to pass through any blockade, whether such blockade be imposed on all vessels, or is imposed selectively in any way whatsoever against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever, or to proceed to an area where she shall be subject, or is likely to be subject to a belligerent's right of search and/or

13

# RIDER CLAUSES TO M.V. "ATLANTIC PROJECT"/BRIGHT CHARTER PARTY DATED 12TH FEB., 2009

confiscation.

(d)   (i)   The Owners may effect war risks insurance in respect of the Hull and   Machinery of the Vessel and their other interests (including, but not limited to, loss of earnings and detention, the crew and their protection and Indemnity Risks), and the premiums and/or calls therefor shall be for their account.

(ii)   If the Underwriters of such insurance should require payment of premiums and/or calls because, pursuant to the Charterers' orders, the Vessel is within, or is due to enter and remain within, or pass through any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then the actual premiums and/or calls paid shall be reimbursed by the Charterers to the Owners at the same time as the next payment of hire is due, or upon redelivery, whichever occurs first.

(e)   If the Owners become liable under the terms of employment to pay to the crew any bonus or additional wages in respect of sailing into an area which is dangerous in the manner defined by the said terms, then the actual bonus or additional wages paid shall be reimbursed to the Owners by the Charterers at the same time as the next payment of hire is due, or upon redelivery, whichever occurs first.

(f)   The Vessel shall have liberty:-
(i)   to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery, or in any other way whatsoever, which are given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government, body or group whatsoever acting with the power to compel compliance with their orders or directions;

(ii)   to comply with the order, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;

(iii) to comply with the terms of any resolution of the Security Council of the United Nations, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

(iv)   to discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier;

(v)   to call at any other port to change the crew or any part thereof or other persons on board the Vessel

14

# RIDER CLAUSES TO M.V. "ATLANTIC PROJECT"/BRIGHT CHARTER PARTY DATED 12TH FEB., 2009

when there is reason to believe that they may be subject to internment, imprisonment or other sanctions.

(g)   If in accordance with their rights under the foregoing provisions of this Clause, the Owners shall refuse to proceed to the loading or discharging ports, or any one or more of them, they shall immediately inform the Charterers. No cargo shall be discharged at any alternative port without first giving the Charterers notice of the Owners' intention to do so and requesting them to nominate a safe port for such discharge. Failing such nomination by the Charterers within 48 hours of the receipt of such notice and request, the Owners may discharge the cargo at any safe port of their own choice.

(h)   If in compliance with any of the provisions of sub-clauses (b) to (g) of this Clause anything is done or not done, such shall not be deemed a deviation, but shall be considered as due fulfilment of this Charter Party.

**Clause 45.**
Vessel's hold on delivery or arrival at first loading port to be clean swept/washed down by fresh water and dried up so as to receive Charterer's intended cargoes in all respects, free of salt, rust scale and previous cargo residue to the satisfaction of local, relevant surveyors.
Should the vessel not approved by relevant surveyors as Charterer's intended cargo cleanliness, full self trimming bulk carrier and fully equipped for the loading according to SOLAS regulations, the vessel to be placed off-hire from the rejection until the vessel is fully accepted and any expenses and time incurred thereby to be for Owner's account.
Vessel to be redelivered with clean swept holds but Charterers to have the option to redeliver the vessel without cleaning holds with Charterers paying USD 2,500 lumpsum excluding all dunnage, lashing debris removal/disposal and USD 1,250 per month or pro-rata for Charterers' cable/vitualling/entertainment etc.

**Clause 46.**
If needed, artificial seperation to be allowed in Charterer's time/expenses/risk.

**Clause 47.**
Charterers to undertake to keep Owners and Master informed during the period as regards the itinerary of the vessel and the names of their agents at ports of call.

**Clause 48.**
Owners to appoint agent to attend to all Owners' matters such as hospitalisation, repatriation of crew, repairs, supply of ship's store and provisions etc.
However, Charterers' agent to attend minor Owners' matters such as handling mail, shorepass, handing

15

# RIDER CLAUSES TO M.V. "ATLANTIC PROJECT"/BRIGHT CHARTER PARTY DATED 12TH FEB., 2009

cash to Master, taxi rides and minor store/provisions requirement etc. Charterers are entitled to deduct estimate Owners' expenses max USD 1,000 per each port from last hire and Charterers should provide relevant voucher in due course.

**Clause 49.**

The Master shall sign the bills of lading or waybills for cargo as presented in conformity with mates receipts. However the Charterers and/or their agents may sign Bill of Lading with the master's prior written authority, always in conformity with mates receipts.

Neither the Charterers not their agents shall permit the issue of any Bill of Lading, waybill, or other document evidencing a contract of carriage for this vessel (wether or not signed on behalf of the Owners or on the Charterers behalf or on behalf of any sub Charterers) incorporating, where not compulsory applicable, the Hamburg rules or any other legislation imposing liabilities in excess of the Hague- Visby rules. The Charterers shall indemnify the Owners against any liability, loss or damage which may result from any breach of the foregoing provision of this clause.

A) No liner, through, transhipment or combined transport Bill of Lading, and no waybills, are to be issued under this charter, but the Charterers are authorized to sub-charter partial spaces to be used on liner service and then sub-charterers may use such spaces for loading their cargoes covered and issue liner, through, transshipment and combined Bill of Lading with final destination under transshipment always provided that they act as carriers on the face of the Bill of Lading and same shall never be signed by or on behalf of the Master or the owners, but only by the Charterers or their agents as carriers.

B) Original Bill of Lading, on request of shippers can be carried on board of the vessel to the port(s) of destination during the currency of this charter. In case no original Bill of Lading are be available at discharge port, Charterers will have the right to discharge the cargo without production of original Bill of Lading, against presentation of a LOI (Letter Of Indemnity) in accordance with Owners P&I Club wording, which to be issued on Charterers head letter and duly signed by Charterers only.

C) All Bill of Lading shall be issued without prejudice to this charter. Charterers shall be liable for and shall indemnify Owners against a liabilities, losses, damages, delays, costs, expenses, claims or other consequences arising as a result of Bill of Lading being signed by any party, including the master at Charterers request, which do not comply with the provisions of this clause or with any other provisions of this charter.

**Clause 50.**

Owners or Master to cable to "Bright Shipping" and Charterers' agents at first loading port expected time

16

# RIDER CLAUSES TO M.V. "ATLANTIC PROJECT"/BRIGHT CHARTER PARTY DATED 12TH FEB., 2009

of delivery and expected quantities of IFO and MGO remaining on board at time of delivery, upon fixing.

**Clause 51.**

Owners' P&I Club: Ingosstrakh of Moscow

Charterers have the benefit of Owners' P&I Club so far as the rules permit.

**Clause 52.**

Throughout the period of this Charter vessel will have on board current valid up-to-date certificate and will so comply with all applicable requirements, regulations and recommendations as per her Class or/and Flag State.

Any delay caused by non-compliance with the aforesaid or lack of proper documentation and/or certificates and/or equipment and fittings required will be considered off-hire and all expenses resulting from such delay, including bunkers consumed during the period, will be for Owners' account.

**Clause 53.**

If the vessel is off-hire for a consecutive period of 20 days, Charterers have the right to cancel this Charter Party without any further obligation under this contract on the party of Charterers, provided no cargo remaining onboard.

**Clause 54.**

Any taxes levied by country of vessel's registry to be for Owners' account. Any taxes and/or dues on cargo/freight and/or vessel levied as a result of the trade in which vessel is employed to be for Charterers account.

**Clause 55.**

In the event of breakdown of derricks/cranes by reason of disablement of insufficient power or otherwise unless caused by Charterers or Charterers' servants, the hire to be reduced pro-rata for the period of such insufficiency in proportion to the number of cranes that were working at the time of breakdown of equipment.

If Charterers elect to continue work on hatch or hatches affected by breakdown by hiring shore appliance prior Owners approval, Owners are to pay for shore appliance, but in such case Charterers are to pay full hire for all time shore appliances are available for work.

Any stevedoring and/or labour charges additionally occurring due to breakdown of vessel's equipment, including costs for standby of stevedore, labour to be for Owners' account.

17

# RIDER CLAUSES TO M.V. "ATLANTIC PROJECT"/BRIGHT CHARTER PARTY DATED 12TH FEB., 2009

**Clause 56.** Deleted.

**Clause 57.**

In case of loss of time due to boycott, picket at any port or place by the shore and/or port labour and/or linesmen and/or pilot and/or tug-boat and/or by governmental authorities directly attributable to flag, ownership and/or the terms and conditions on which captain, officers and the members of the crew were employed or other events immobilizing the vessel then to be off-hired for any time lost thereby and the cost of bunkers consumed during the period to be for Owners' account.

**Clause 58.**

Charterers have the option to load intention cargo on deck/hatch cover at Charterers' time /expenses and on-deck Bills of Lading to be issued. In accordance with the vessel's deck/hatch cover strength and vessel's stability at Master's discretion.

Charterers have the option to weld padeyes on deck/hold at Charterers' time/expenses and same to be removed prior to redeliver but Charterers' option to redeliver vessel without removing paying USD 5 per padeye.

**Clause 59.**

Cargo claims between the Owners and the Charterers shall be settled in accordance with the Inter-Club New York Procedure Exchange Agreement of February 1970, as amended 1996. Charterers to advise Owners immediately about major cargo claims.

**Clause 60.**

Owners warrant that vessel has not been blacklisted by governmental authorities or by other organizations such as bona fide labour unions or suppliers in any of the countries to which she might trade in the course of this Charter Party.

In the event of the vessel is delayed by strikes, lockouts, labour stoppage or any other difficulty due to flag or management of the vessel or due to terms and conditions under which members of the such are employed, the cease for such time lost, costs directly related to the vessel caused by such immobilization to be for Owners' account.

**Clause 61.** Deleted.
**Clause 62.** Deleted.

**Clause 63.**

# RIDER CLAUSES TO M.V. "ATLANTIC PROJECT"/BRIGHT CHARTER PARTY DATED 12TH FEB., 2009

Charterers and supercargoes to have the right of using vessel's means of communication.

**Clause 64.**
No cranemen/winchmen from crew.

**Clause 65.**
Owners to supply fresh water for their account during this Charter except the same used for Charterers' business, which to be for Charterers' account.

**Clause 66.**
Vessel is entitled to burn MGO for main engine when manoeuvre in/out of ports/berths/narrow waters/channels/canals/rivers/straits/coastal waters/bad weather/rough seas and in case of safety and emergency.

**Clause 67.**
Owners to guarantee that the vessel's hatch covers are to be watertight all throughout this Charter Period and if any hatch cover found defective, same to be rectified at Owners' time and expenses to Charterer's satisfaction.
Charterers also have the right to carry hose test on all hatches during the Charter Period.

**Clause 68.**
Cargo gear to be fully efficient state throughout the currency of the Charter Party provide no cargo on board.

**Clause 69.** Deleted.

**Clause 70.**
Owners' privilege of bunkering at their expenses provided this bunkering not disturbing load/discharge operation. It is understood Owners may only bunker provided Charterers' prior consent at ports of call, which not to be unreasonably withheld. But Owners to notify Charterers beforehand.

**Clause 71.**
Should the vessel be arrested during the currency of this Charter at the suit of any person having or purporting to have a claim against or any interest in the vessel. This hire is to be suspended for any period that the vessel remains under arrest unless still available for use by Charterers, or remains unemployed as the result of such arrest and Owners shall reimburse to Charterers any expenditure which they may incur under this Charter in respect of any period during which virtue of the operation of this Clause. The hire is

# RIDER CLAUSES TO M.V. "ATLANTIC PROJECT"/BRIGHT CHARTER PARTY DATED 12TH FEB., 2009

suspended. This clause is non-applicable should the arrest be any omission of Charterers or their agents.

**Clause 72.**

Owners are to allow Charterers to discharge/release full cargoes without presentation of original Bill(s) of Lading by providing with Letter of Indemnity in accordance with Owners' P and I Club form and wording before discharging. Letter of Indemnity to be signed by Charterers only. (See Clause 49)

**Clause 73.**

Normal quarantine time and expenses for vessel entering port(s) to be for Charterer's account, but any time of detention and expenses for quarantine due to pestilence etc., of Master/Officer/Crew to be for Owners' account. Unless it is because of the cargo carried at the port visited whilst under present Charter in which case to be for Charterers account.

**Clause 74.** See Clause 123.

**Clause 75.**

Vessel's cargo gear and all other equipment shall comply with the regulations of her class and flag state and Owners to ensure that vessel is at all times in possession of valid and up-to-date certificates of efficiency to comply with such regulations. Gear certificates to be shown to Charterers or their agents if required.

If stevedore, longshoremen or other workmen are not permitted to work due to failure of Master and/or Owners and/or Owner's agents to comply with the aforementioned regulations or because vessel is not in possession of such valid and up-to-date certificates of efficiency, then Charterers may suspend the hire for the time thereby lost.

**Clause 76.** Deleted.

**Clause 77.**

All negotiations and eventual fixture to be kept top private and confidential.

**Clause 78.**

Any cargo documents required to be translated into Arabic to be done by Charterers at their time and expenses.

**Clause 79.**

Whilst bunkering the representative samples may be drawn by ship's from bunkering line and analysed for quality by at one of their laboratories on Owners' account to ensure the same to be specification as laid

# RIDER CLAUSES TO M.V. "ATLANTIC PROJECT"/BRIGHT CHARTER PARTY DATED 12TH FEB., 2009

down in this Charter Party. Charterers to ensure bunker supplies co-operate with ship's staff sign sample bottles. Charterers to supply bunkers of a quality to comply with IFO(180CST) and MGO.

**Clause 80. Trading Exclusions**

New Zealand, Australia, North Korea, Israel, Nigeria, Somalia, Great Lakes, Turkey, Cuba.

\* Japan excluded but Charterers option to trade Japan against paying for issuing of PNI certificate. Charterers pay the cost against copy of voucher. Charts to give Owners min 2 weeks notice before calling any Japanese port. (estimated cost is about USD 15,000 with validity one month)

\* Vessel can trade all ports of "CIS" but not to be allowed "CIS pacific ports" fm July till October. Charterers to issue Asian gypsy moth certificate at their time/expenses before vessel's departure from "CIS pacific port"otherwise all cleaning shall be for chrs account.

\* Vessel can trade all of USA area except California but vessel to be allowed to trade "California" after issued "cofr certificate" at charterers cost if Charterers need to trade the area which case Owners to issue the certificate and Charterers to pay the cost against copy of voucher" Charterers to give Owners min 2 weeks notice before calling any californian port.

**Clause 81.**

For the purpose of computing hire payments, time of delivery/redelivery to be adjusted to GMT.

**Clause 82.** Deleted

**Clause 83.**

Self-Pilotage, if to be settled between Charterers and Master directly.

**Clause 84.**

Owners guarantee that vessel is not black-listed in ports of call except in accordance with trade exclusion.

**Clause 85.**

Charterers and/or agent may be authorized by the master to sign in accordance with mate's receipts without predjudice to this Charter party. Charterers shall indemnify the Owners against all consequences or liabilities arising from Charterers or their agents signed Bill(s) of Lading.

**Clause 86.** Deleted

**Clause 87.** Deleted

# RIDER CLAUSES TO M.V. "ATLANTIC PROJECT"/BRIGHT CHARTER PARTY DATED 12TH FEB., 2009

**Clause 88.** Deleted
**Clause 89.** Deleted

**Clause 90.**
Owners/Master to give Charterers upon clean fixing notice of vessel's expected delivery.

**Clause 91.** Deleted.

**Clause 92.**
If the vessel is in a port or idle at a safe anchorage for a total of 30 days or longer, Charterers are to arrange for an underwater inspection by divers at Charterers' cost and time. If the vessel's bottom and propeller is fouled Charterers are to bear cost and time of hull bottom and propeller cleaning provided the vessel is not off-hire.

If it is impractical to carry out cleaning at the port where the failing occurred, by virtue of there being no professional cleaning equipment/cleaner available or because Charterers require vessel to sail for next employment. Charterers have no right to lodge a speed or bunker claim against the Owners for the remainder of the Charter Period or until the hull/propeller has been restored to original condition as evidence by photographs from the cleaning contractor.

**Clause 93.** Deleted
**Clause 94.** Deleted

**Clause 95.**
Bimco Standard Law & Arbitration Clause 1998 - English Law, London Arbitration to be applied.

**Clause 96.** Deleted
**Clause 97.** Deleted
**Clause 98.** Deleted
**Clause 99.** Deleted
**Clause 100.** Deleted
**Clause 101.** Deleted

**Clause 102.**
Any delays and/or expenses or fines incurred on account of smuggling by Master, officers or crew to be for Owners' account.

# RIDER CLAUSES TO M.V. "ATLANTIC PROJECT"/BRIGHT CHARTER PARTY DATED 12TH FEB., 2009

Any delays and/or expenses or fines incurred as a result of misrepresentation of cargo on manifest and/or Bill of Lading and/or caused by any smuggling by Charterers, their representative and/or Charterers' supercargo or stevedore to be for Charterers' account.

**Clause 103.** Deleted

**Clause 104.**
From the date of coming into force of the international safety management (ISM) code in relation to the vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the vessel and "the company" (as defined by the ISM Code) shall comply with requirements of the ISM Code. Upon request the Owners shall provide a copy of relevant document of compliance (DOC) and safety management certificate (SMC) to the Charterers.

Except as otherwise provided in this Charter Party, loss, damage, expenses, liability or delay caused by failure on the part of the Owners or "the company" to comply with ISM Code shall be for Owners' account and agree to harmless and indemnify Charterers accordingly.

**Clause 105.** Deleted
**Clause 106.** Deleted
**Clause 107.** Deleted

**Clause 108.**
That the Captain shall prosecute his voyages with the utmost despatch and shall be under the orders and directions of Charterers as regards employment and agency and Charterers are to load, stow, trim and discharge the cargo at their expense under the supervision and responsibility of captain.

**Clause 109.**
Charterers to have liberty to load en route part/additional cargo.

**Clause 110.**
Owners guarantee that valid ITF or equivalent agreement for the vessel covering any port or place is available on board for the whole period of this Charter Party.

**Clause 111. BIMCO ISPS/MTSA Clause for Time Charter Parties 2005**
(a)(i) The Owners shall comply with the requirements of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) relating to the

# RIDER CLAUSES TO M.V. "ATLANTIC PROJECT"/BRIGHT CHARTER PARTY DATED 12TH FEB., 2009

Vessel and "the Company" (as defined by the ISPS Code). If trading to or from the United States or passing through United States waters, the Owners shall also comply with the requirements of the US Maritime Transportation Security Act 2002 (MTSA) relating to the Vessel and the "Owner" (as defined by the MTSA).

(ii) Upon request the Owners shall provide the Charterers with a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) and the full style contact details of the Company Security Officer (CSO).

(iii) Loss, damages, expense or delay (excluding consequential loss, damages, expense or delay) caused by failure on the part of the Owners or "the Company"/"Owner" to comply with the requirements of the ISPS Code/MTSA or this Clause shall be for the Owners' account, except as otherwise provided in this Charter Party.

(b)(i) The Charterers shall provide the Owners and the Master with their full style contact details and, upon request, any other information the Owners require to comply with the ISPS Code/MTSA. Where sub-letting is permitted under the terms of this Charter Party, the Charterers shall ensure that the contact details of all sub-charterers are likewise provided to the Owners and the Master. Furthermore, the Charterers shall ensure that all sub-charter parties they enter into during the period of this Charter Party contain the following provision:

"The Charterers shall provide the Owners with their full style contact details and, where sub-letting is permitted under the terms of the charter party, shall ensure that the contact details of all sub-charterers are likewise provided to the Owners".

(ii) Loss, damages, expense or delay (excluding consequential loss, damages, expense or delay) caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account, except as otherwise provided in this Charter Party.

(c) Notwithstanding anything else contained in this Charter Party all delay, costs or expenses whatsoever arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code/MTSA including, but not limited to, security guards, launch services, vessel escorts, security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the negligence of the Owners, Master or crew. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

24

# RIDER CLAUSES TO M.V. "ATLANTIC PROJECT"/BRIGHT CHARTER PARTY DATED 12TH FEB., 2009

(d) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

**Clause 112. BIMCO Double Banking Clause**

(A) The Charterers shall have the right, where and when it is customary and safe for vessels of similar size and type to do so, to order the vessel to go, lie or remain alongside another vessel or vessels of any size or description whatsoever or to order such vessel to come and remain alongside at such safe dock, wharf, anchorage or other place for transhipment, loading or discharging of cargo and/or bunkering.

(B) The Charterers shall pay for and provide such assistance and equipment as may be required to enable any of the operations mentioned in this clause safely to be completed and shall give the owners such advance notice as they reasonably can of the details of any such operations.

(C) Without prejudice to the generality of the Charterers' rights under (A) and (B), it is expressly agreed that the master shall have the right to refuse to allow the vessel to perform as provided in (A) and (B) if in his reasonable opinion it is not safe so to do.

(D) The owners shall be entitled to insure any deductible under the vessel's hull policy and the Charterers shall reimburse the owners any additional premium(s) required by the vessel's underwriters and/or the cost of insuring any deductible under the vessel's hull policy.

(E) The Charterers shall further indemnify the owners for any costs, damage and liabilities resulting from such operation. The vessel shall remain on hire for any time lost including periods for repairs as a result of such operation.

**Clause 113.** Deleted

**Clause 114.**

Cargo claims to be adjusted and settled in accordance with New York Produce Exchange Interclub Agreement and amendments thereto. But Charterers are to handle all cargo claims at the first instance and to be settled with prior approval of Owners' P&I Club. Charterers to advise Owners immediately about any major cargo claims.

**Clause 115.** See Clause 32.

**Clause 116.**

# RIDER CLAUSES TO M.V. "ATLANTIC PROJECT"/BRIGHT CHARTER PARTY DATED 12TH FEB., 2009

The Charterers shall furnish the Master from time to time with all requisite instructions including sailing directions, berthing, cargo stowage, loading, discharging in writing, the English language. Owners/Master shall have no responsibility whatsoever for any/all disputes and consequences thereof resulting from Charterers' failure to provide necessary instruction to Master in writing and all liabilities, consequential losses including commercial losses, detention, extra expenses resulting from Charterers' such failure shall rest with Charterers in its entirety.

**Clause 117.** Deleted

**Clause 118.**
In case of any disputes/conflict amongst Charterers, sub-Charterers and any other parties and also if the vessel is arrested or detained thereof, the Charterers shall be under the obligation to resolve any such dispute/conflict/claims/liabilities etc directly with the parties concerned without involving Owners and shall arrange release of vessel from arrest or detention at their cost, risk, responsibilities, time and expenses absolving Owners from any/all such claims, responsibilities, liabilities of any nature and vessel shall remain on hire.

**Clause 119.**
Intermediate hold cleaning: USD 400 per hold lumpsum excluding all dunnage, lashing debris removal/disposal.

**Clause 120.** Deleted

**Clause 121.**
Charterers have option to breach Institute Warranty Limits, after obtaining owners' prior approval, which should not be unreasonably withheld, but strictly subject that the vessel not to be ordered to nor bound to enter:
(A) any ice-bound port or place or any port or place where lights, lightships, marks and buoys are or are likely to be withdrawn by reason of ice of vessel's arrival or where there is risk that the vessel will not be able on account of ice to reach the port or place or to depart therefrom after completing loading or discharging. If on account of ice the master considers it dangerous to remain at the loading or discharging port or place for tear of vessel being frozen in and/or damages, the master shall have liberty to sail to a convenient port or place and await Charterers' fresh instructions. And
(B) The vessel shall not be obliged to force ice, nor to follow ice-breakers. It is mutually agreed that any extra insurance for breaking Institute Warranty Limits to be for Charterers account and same to be paid by Charters to the owners against underwriters original vouchers less any discount and in any case prior

# RIDER CLAUSES TO M.V. "ATLANTIC PROJECT"/BRIGHT CHARTER PARTY DATED 12TH FEB., 2009

breaking Institute Warranty Limits

**Clause 122.**

The Charterers may supply an independent weather routing company's advice to the master, during voyages specified by the Charterers. The Master shall comply with the reporting procedure of the routing service selected by the Charterers, however, the Master remains responsible for the safe navigation and choice of route. Evidence of weather conditions shall be taken from the vessel's deck logs and weather routing company's reports. In the event of a consistent discrepancy between the deck logs and the weather routing company's reports, weather routing company's reports shall be taken as ruling.

**Clause 123.**

Watchmen charges, if any shall be borne, by party arranged/ordered the same unless it is compulsory in which case to be for Charterers' account.

**Clause 124.**

Owner's option to arrange by their own P&I Club a preshipment condition survey if intended cargo to be loaded steel, newsprint and/or other unpacked manufactured merchandise at Owner's expense.

**Clause 125.**

OIL POLLUTION

A)      If Owners are required to establish or maintain P&I guarantee of responsibility in respect of oil pollution damage to enable vessel lawful to enter, remain in or leave any port, place, territorial or contiguous waters of any country of state in performance of this Charter Party, Owners shall make an arrangements by P&I guarantee as the case may be necessitated to satisfy such requirement at Owners' sole expenses.

B)      Charterers shall be no responsible for all consequences (including loss of time) of oil pollution damage and any failure or inability of Owners to do so as provided for above and any loss of time incurred thereby to be off-hire.

C)      Owners shall indemnify Charterers against all consequences (including final if any imposed to Charterers) of oil pollution damage and any failure or inability of Owners to do so as provided for in preceding paragraph (A).

**Clause 126.**

# RIDER CLAUSES TO M.V. "ATLANTIC PROJECT"/BRIGHT
# CHARTER PARTY DATED 12TH FEB., 2009

Any off-hire period to be added to the charter period by Charterers option which to be declared latest on tendering first redelivery notice.

**Clause 127.**
Charterers have option to breach IWL subject to Owners prior consent which will not be unreasonably withheld and Charterers to pay additional premium.
NAABSA Clause to be applied only where customary.

**Clause 128.**
- Bimco Stowaways Clause for time charters to apply and to be incorporated in the charter party.
- Bimco Stevedore Damage clause for time charters to apply and to be incorporated in the charter party.

### *** Additional Clause ***

- Charterers have the option to bunker the vessel with RMF grade IFO at South Africa, but minimum required to reach next main bunkering port.

- Owners confirm that the vessel's stern ramp is in good order.

### Deck Cargo Clause

Charterers are entitled to load cargo on deck and hatch covers in accordance with normal marine practice and safety regulations and always subject to vessels seaworthiness, strength, stability and safety of crew. Deck cargoes to be entirely at Charterers/shippers/receivers risk, time and expense. Deck cargoes to be loaded, stowed, lashed and secured to master's satisfaction. Extra expenses and/or detention/deviation if any due to deck cargoes to be for charterers account. All bills of lading for deck cargoes to be claused "shipped on deck at charterers, shippers and receivers risk, expense and responsibility, without any liability on the part of the vessel or her Owners for any loss, damage, expense and/or delay howsoever caused. Charterers can make any and all fittings required for loading deck cargo. All fittings to be make according to class recommendations.

### Bunker Quality Control Clause for Time Chartering

(1) The Charterers shall supply bunkers of a quality suitable for burning in the Vessel's engines and auxiliaries and which conform to the specification(s) mutually agreed under this Charter.

(2) At the time of delivery of the Vessel the Owners shall place at the disposal of the Charterers, the bunker delivery note(s) and any samples relating to the fuels existing on board.

# RIDER CLAUSES TO M.V. "ATLANTIC PROJECT"/BRIGHT CHARTER PARTY DATED 12TH FEB., 2009

(3) During the currency of the Charter the Charterers shall ensure that bunker delivery notes are presented to the Vessel on the delivery of fuel(s) and that during bunkering representative samples of the fuel(s) supplied shall be taken at the Vessel's bunkering manifold and sealed in the presence of competent representatives of the Charterers and the Vessel.

(4) The fuel samples shall be retained by the Vessel for 90 (ninety) days after the date of delivery or for whatever period necessary in the case of a prior dispute and any dispute as to whether the bunker fuels conform to the agreed specification(s) shall be settled by analysis of the sample(s) by (...) or by another mutually agreed fuels analyst whose findings shall be conclusive evidence as to conformity or otherwise with the bunker fuels specification(s).

(5) The Owners reserve their right to make a claim against the Charterers for any damage to the main engines or the auxiliaries caused by the use of unsuitable fuels or fuels not complying with the agreed specification(s). Additionally, if bunker fuels supplied do not conform with the mutually agreed specification(s) or otherwise prove unsuitable for burning in the ship's engines or auxiliaries the Owners shall not be held responsible for any reduction in the Vessel's speed performance and/or increased bunker consumption nor for any time lost and any other consequences.

## HAMBURG RULES CHARTERPARTY CLAUSE

Neither the Charterers nor their Agents shall permit the issue of any bill of lading, waybill or other document evidencing a contract of carriage(whether or not signed on behalf of the Owner or on the Charterers' behalf or on behalf of any Sub- Charterers) incorporating, where not compulsorily applicable, the Hamburg Rules or any other legislation giving effect to the Hamburg Rules or any other legislation imposing liabilities in excess of Hague or Hague/Visby Rules. Charterers shall indemnify the Owners against any liability, loss or damage which may result from any breach of the foregoing provisions of this clause.

## SALE CLAUSE

The owners shall have the option of selling the vessel, change the management and/or change vessels flag during the currency of this Charter party always giving charterers minimum 45 days prior notice of their intention to do so. In case the owners will decide to sell the vessel to third party, they will give first priority to the present charts to negotiate sale with owners. If failed owners are free to proceed with any party and sell the vessel as is with charter attached.

## FUEL SULPHUR CONTENT CLAUSE

Without prejudice to anything else contained in this Charter Party, the Charterers shall supply fuels of such specifications and grades to permit the Vessel, at all times, to comply with the maximum sulphur content

# RIDER CLAUSES TO M.V. "ATLANTIC PROJECT"/BRIGHT CHARTER PARTY DATED 12TH FEB., 2009

requirements of any emission control zone when the Vessel is ordered to trade within that zone.

The Charterers also warrant that any bunker suppliers, bunker craft operators and bunker surveyors used by the Charterers to supply such fuels shall comply with Regulations 14 and 18 of MARPOL Annex VI, including the Guidelines in respect of sampling and the provision of bunker delivery notes.

The Charterers shall indemnify, defend and hold harmless the Owners in respect of any loss, liability, delay, fines, costs or expenses arising or resulting from the Charterers' failure to comply with this clause.

## NEW BOTH – TO – BLAME COLLISION CLAUSE

If the liability for any collision in which the vessel is involved while performing this Bills of Lading falls to be determined in accordance with the laws of the United States of America, the following clause shall apply:-

"If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the master, mariner, Pilot or the servant of the carrier in the navigation or in the management of this ship, the Owners of the goods carried hereunder will indemnify the carrier against loss or liability to the other or non-carrying ship or her Owners in so far as such loss and liability represents loss of, or damage to, or any claim whatsoever of the Owners of the said goods, paid or payable by the other or non-carrying ship or her Owners to the Owners of said goods set off, recouped or recovered by the other or non-carrying ship or her Owners as part of their claim against the carrying ship or carrier.

The foregoing provisions shall also apply where the Owners, Operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contact."

## NEW JASON CLAUSE

"In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible by statute, contract or otherwise, the goods, Shippers, Consignees or Owners of the goods shall contribute with the carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods.

If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully as if such salving ship or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover the

30

# RIDER CLAUSES TO M.V. "ATLANTIC PROJECT"/BRIGHT CHARTER PARTY DATED 12TH FEB., 2009

estimated contribution of the goods and any salvage and special charges thereon shall, if required, to be made by the goods, Shippers, Consignees, or Owners of the goods to the carrier before delivery."

And the Charterers shall procure all Bills of Lading issued under this charter party shall contain the same clause.

## CHAMBER OF SHIPPING NUCLEAR PARAMOUNT

Notwithstanding anything herein contained no absolute warranty of seaworthiness is given or shall be implied in this Charter Party and it is expressly agreed that the Owners shall have the benefit of the "Rights and Immunities" in favour of the carrier or ship and shall assume the "Responsibilities and Liabilities" contained in the enactment in the country of shipment giving effect to the rules set out in the International Convention for the unification of certain rules relation to the Bills of Lading dated Brussels 25th August, 1924 (the "Hague Rule").

If no each enactment is in force in the country of shipment the Terms of Article iii & iv shall apply:

Notwithstanding the provisions of any such claims shall be limited to Stg, 200 Lawful money of the United Kingdom per package or unit of cargo (unless the nature and value of such cargo have been declared by the Shipper before loading and inserted in the Bill of lading) notwithstanding that some other monetary limits is laid down by the legislation to which the contract of carriage is subject. If any of this Charter Party shall be repugnant to the said rules to any extent, such provision shall avoid to that extent,

but no further, Any Bill of lading issued pursuant to this Charter Party shall contain a Clause Paramount incorporating the Hague Rules whether they are compulsorily applicable or not.

## CHAMBER OF SHIPPING NUCLEAR PARAMOUNT

Notwithstanding any other provision contained in this charter, it is agreed that nuclear fuels or radioactive products or waste are specifically excluded from the cargo permitted to be loaded or carried under this Charter Party. This exclusion does not apply to radio isotope used or intended to be used for any industrial, commercial, agricultural, medical or scientific purpose, provided Owners' prior approval has been obtained to the loading thereof.

## U.S.A. CLAUSE PARAMOUNT

This Bill of Lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act.

The provisions stated in said Act shall (except as may be otherwise specifically provided herein) govern

31

# RIDER CLAUSES TO M.V. "ATLANTIC PROJECT"/BRIGHT CHARTER PARTY DATED 12TH FEB., 2009

before the goods are loaded on and after they are discharged from the ship and throughout the entire time the goods are in the custody of the carrier.

The carrier shall not be liable in any capacity whatsoever for any delay, non-delivery or mis-delivery, or loss of or damage to the goods occurring while the goods are not in the actual custody of the carrier.